IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| Christine Shipco LLC, | * | |
| Plaintiff, | * | Civil Action No. |
| v. | * | |
| Shipoil Limited, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT FOR DECLARATORY JUDGMENT

Pursuant to 28 U.S.C. § 2201, Christine Shipco LLC ("Christine") complains against Shipoil Limited ("Shipoil") for a declaratory judgment, as follows:

### JURISDICTION AND VENUE

1.      This is a case of admiralty and maritime jurisdiction pursuant to Federal Rule of Civil Procedure 9(h) and 28 U.S.C. § 1333.

2.      Venue is proper in this jurisdiction because the property of Christine directly involved in the controversy between Christine and Shipoil is or soon will be located within this District, namely, the M/V STAR MARTHA ("Vessel").

3.      Jurisdiction in this District is proper because by information and belief, as set out below, Shipoil has instructed counsel in this District for arrest of the Vessel and may or have already by action filed under seal appeared in this District, or shortly will appear by counsel in this District.

### PARTIES

4.      Christine is a Marshall Islands corporation and owner of the Vessel.

5.      Shipoil is is a foreign corporation engaged in the business of  providing maritime

necessaries to ships, namely bunkers and has its registered office address at 79 Lei Muk Road.

## **FACTS**

6.      There is a justiciable dispute and actual controversy concerning the parties' rights

and obligations.  The parties are "interested part[ies]" within the meaning of Under 28 U.S.C. §

2201.

7.      Specifically, November 27, 2023 Shipoil counsel in Greece wrote the Vessel's

managers as follows:

> To: Christine Shipco LLC/Star Bulk Management Inc./Starbulk S.A./Star Bulk Carriers
> Corp.
> ============================================================
> Dear Sirs,
> URGENT-IMPORTANT
> Reference is made to the attached messages (all of which remain unreplied) and our
> clients' (Shipoil Limited of Hong Kong) maritime lien over the vessel. The claim now
> comprises as follows:
> -USD 405,320 principal.
> -USD 583,660.80 default interest/late payment charges.
> -USD 35,000 costs incurred to date in our clients pursuing payment of this debt.
> Our clients, once again, require immediate payment of the entire above debt, reserving all
> rights, such rights including but without limitation the arrest of the vessel in order to
> secure and enforce the debt. Our clients are free to exercise their rights at any time.
> Thank you and best regards,
> Milto N. Papangelis
> Partner
> PPT Legal
>
> Piraeus Office: 61-65 Filonos Str. , 185 35 Piraeus, Greece
> Telephone: +30 210 4135407, Fax: +30 210 4135505, email: mnp@pptlegal.gr, url:
> www.pptlegal.gr

8.      Shipoil by Greece counsel has demanded "damages" in excess of $1,000,000, including principal, interest, attorneys fees and other amounts.  The Vessel is to arrive Baltimore on or about December 15, 2023.  The timing of Shipoil counsel's message indicates Shipoil's intention to arrest or otherwise attach or interfere with the operations of and delay the Vessel at its Baltimore arrival.

9.      Such arrest or any claim arising from the bunkers provision described herein, against the Vessel, Christine or otherwise, however, would be wrongful:  Shipoil has no right to arrest or attach the Vessel, on any basis.  Arrest of the Vessel is likely to cause Christine significant damages, which may include but not limited to loss of a new charter party hire of the Vessel to commence at or shortly after the Vessel's Baltimore arrival.

10.     The threatened arrest by Shipoil arises out of the provision of bunkers ( marine fuel ) to the Vessel on or about 11 November, 2023 at Gibraltar (herein, the "Bunkers").  EGPN Bulk Carrier CO., LTD ("EGPN"), the then-voyage charterer of the Vessel, ordered the bunkers from bunker trader Glander International Bunkering (Norway) AS, Øvre Langgate 50, Tønsberg, Norway ("Glader").  EGPN had no contact with Shipco for the ordering of the bunkers.

11.     After EGPN ordered the Bunkers from Glander, Glander then through its Swiss affiliate, subcontracted the provision of the Bunkers to another bunker trader, LBVG Havacilik Gemicilik Petrol Ürünleri Sanayi Ve Ticaret Limited Sirketi  - Istanbul ("LBVG").  Neither EGPN or Shipoil had any relationship for the provision of the Bunkers, or otherwise, with LBVG nor did they approve or know of this subcontracting.

12.     LVBG then further subcontracted the Bunkers provision to Shipoil.  LVBG had no authority from EGPN or Christine for this subcontracting and specifically, was not authorized on their behalf to make any representation that LVBG was acting for Christine, its managers,

charterers or anyone authorized in any way to incur a maritime lien or claim against the Vessel. Any contrary representation by LVBG to Shipoil or anyone else was false and fraudulent, and Shipoil had no right to rely on any such false and fraudulent representation – and as set out below, had no such reliance in any event.  LVBG's only contractual relationship was with Glander's Swiss affiliate.

13.     Apparently without trust in either LVBG's credibility – or creditworthiness – Shipoil required that LBVG wire Shipoil cash in advance of any further Shipoil provision of bunkers to the Vessel at Gibraltar.  LVGB by information agreed to provide this cash in advance payment.

14.     By demand for and agreement to cash in advance payment, if Shipoil had any right otherwise to claim a maritime lien against the Vessel or any other claim involving the Vessel, Shipoil waived that claim; by no means did Shipoil rely on the Vessel's credit to secure any payment for or amount due for bunkers provided to the Vessel.  Shipoil also did not rely on any representation of LVGB, except, apparently, that LVGB make cash in advance payment for the Bunkers.

15.     Shipoil at some point after its agreement with LVGB then proceeded to arrange with Aegean Marine Petroleum ("Aegean"), which operated a bunkering barge at Gibraltar, to physically deliver the Bunkers to the Vessel, Shipoil committing to pay Aegean for the Bunkers.

16.     Neither Christine nor anyone on its behalf had any actual, implied or ratified relationship with any entity other than Glander concerning provision of the Bunkers to the Vessel.  Specifically neither Christine nor anyone on its behalf had any relationship with LVBG, Shipoil, or Aegean concerning provision of Bunkers to the Vessel, excepting only that the Vessel's master and local Gibraltar agents coordinated with Aegean the timing and location for

- 4 -

the Bunkers supply, and the Vessel's master signed the bunker delivery notes ("BDN's") confirming receipt of the Bunkers.

17.     Specifically, prior to the Bunkers provision, Christine through its managers and agents communicated by multiple means to Aegean that no lien or claim was permitted to arise against the Vessel and that no one including charterers EGPN had a right to make claim, including for any maritime lien, against the Vessel.  Aegean, directly and then through and by acknowledgement of its bunker tanker personnel prior to the Bunkers provision at Gibraltar, confirmed receipt of and acknowledged receiving these "no lien" notices.

18.     At the time that Aegean received the "no lien" notices for the Vessel, prior to the Bunkers provision, Aegean was acting as agent of Shipoil and through Shipoil, LVBG, and Shipoil and through it LVBG had actual notice of the "no lien" notices prior to the Bunkers provision.

19.     At some point on or about or shortly before November 11, 2017 Shipoil claims to have received from LVBG confirmation that LVBG had wired to Shipoil the required cash in advance payment for the Bunkers.  Relying only on that alone Shipoil apparently instructed Aegean to physically deliver the Bunkers to the Vessel, becoming contractually liable to Aegean for the price of the Bunkers.

20.     After giving instructions to Aegean, however, Shipoil learned that the "confirmation" of the wire that LVBG had provided Shipoil was false and fraudulent.  LVBG despite sending "confirmation" never wired the cash in advance funds to Shipoil.

21.     A short amount of time passed and there by information and belief there were communications between Aegean, Shipoil and LVBG, which resulted in the Aegean-issued

BDNs, confirming provision of the Bunkers, being sent from Aegean, to Shipoil, to LVBG, and then to Glander.

22.     Glander after receiving the BDNs paid LVBG and Glander then invoiced charterer EGPN, sending EGPN the BDNs.   EGPN paid Glander, satisfying any and all liens and claims which there might have been otherwise, in favor of Glander or any other entity concerning or relating to the Bunkers.

23.     After the provision of the Bunkers, Shipoil by information and belief concluded that its reliance on LVBG and cash in advance payment had been wrong and that LVBG had defrauded Shipoil.  Shipoil then, beginning in 2018, began making demands on EGPN and eventually on Christine, claiming variously that EGPN and/or Christine and/or the Vessel owed Shipoil for the amounts that LVBG had not paid ( and had defrauded for paying) Shipoil.

24.     EGPN and Christine continually denied Shipoil's claims.  In particular, neither EGPN nor Christine ever agreed as a part of the Bunkers transaction or otherwise that Shipoil's Terms and Conditions, apparently including U.S. and New York law, at all affected any claims against the Vessel, EGPN or Christine.

25.     During the time from November, 2017 to the present, the Vessel has – after Shipoil learned of LVGB's fraud – berthed in the U.S. (in 2018), Canada, Poland, and passed through other jurisdictions where on various theories, including on claims of maritime liens in rem, Shipoil might have (notwithstanding that it has no claims against the Vessel, Christine or EGPN) arrested the Vessel.  In 2018, for example, Shipoil, by its present Greece counsel (their message, *supra*) threatened to arrest the Vessel at India.

26.     Maryland's general contract and tort statute is three (3) years.  Shipoil's Terms and Conditions, which it asserts applies to claims against the Vessel, incorporates New York

law, which under the Second Circuit's *Leopard Marine v Easy Street* precedent (in which Shipoil's New York counsel, U.S. lead in claims against Christine and/or the Vessel also were lead counsel, as set out below) is one (1) year.  Laches – with the unpaid-for Bunkers provided November, 2017, over six (6) years ago, has run on any claim that Shipoil may attempt to assert against the Vessel and/or Christine in connection with the Bunkers, including but not limited to the multiple opportunities which Shipoil since the Bunkers provision has had to assert its arrest claims in court proceedings against the Vessel.  Christine has been prejudiced by this delay, including because Shipoil has not attempted to arrest the Vessel with the filing of any arrest or similar proceeding, and the facts of the claim have faded.

27.     In particular, Christine, by counsel, has requested from Shipoil's Greece counsel documentation of LVGB's communications with Shipoil, including those upon which Shipoil claims or might claim that LVGB was authorized by any entity through which the U.S. Commercial Instruments and Maritime Liens Act ("CIMLA") – notwithstanding the no lien notices as set out above – authorizes to bind the Vessel with a maritime lien or otherwise gives any right of claim against Shipoil.  Those communications never have been provided to Christine, if they still exist.

28.     Shipoil further did not until well after the Bunkers provision, send ( with its arrest demand) any copy of its purported invoice to Christine and the Vessel, et al - also supposedly addressed to LVGB – for the Bunkers.  That Shipoil invoice, however, is dated days before the Bunkers provision – November 9, 2017 – when the Bunkers were not provided until November 11, 2017.  Shipoil had prepared this invoice for LVGB and the "cash in advance" contract with LVGB, never for Christine, and can show no invoicing to Christine – or – charterer EGPN (to which the invoice is not addressed).  The Shipoil invoice was never credibly issued to EGPN,

Christine, the Vessel, or any entity under CIMLA or otherwise authorized to bind the Vessel or

Christine with any maritime lien or related claim.

29.     After receiving demand from Shipoil Greece counsel, as set out above, Christine

began preparing a defense against potential arrest of the Vessel by Shipoil at Baltimore.

Christine's managers and/or insurers inquired of Jack Daley at the Baltimore office of Baker,

Donelson about defense; Mr. Daley declined noting a conflict, clearly indicating that he had bee

instructed concerning the threatened arrest.  New York and Houston-based lawyers, George

Chalos and Briton Sparkman of Chalos & Co. also have recently represented Shipoil at the

instruction of Shipoil's Greece lead counsel and by information and belief, have instructed Mr.

Daley for a filing with this Court.

30.     In response, undersigned counsel Mr. Simms for Christine has by email and fax,

informed Shipoil's counsel, including Greece lead counsel Miltos Papangelis, Esq., Messrs.

Chalos, Sparkman and Daley, that Christine has appointed Mr. Simms as agent expressly

authorized to receive process for Christine.  At least Mr. Papangelis and Mr. Chalos have sent

return receipts acknowledging receipt and Christine counsel also has received confirmed fax

receipts of the notice of agency to receive service of process.  By virtue of instructing a local

husbanding agent for the Vessel for its Baltimore arrival, and the imminent Baltimore arrival of

the Vessel, Christine does business in this District and overall is subject to service of process in

this District within the meaning of Supplemental Admiralty and Maritime Rule B.  For the

purpose of any action in connection with the Bunkers, brought in this District, Christine consent

and admits to personal jurisdiction in this District.

WHEREFORE, Christine respectfully requests this Court to issue a declaratory judgment

against Shipoil including as follows:

A.      That Shipoil including its assigns, and any other entity or person, has no claims against the Vessel, Christine or any entity associated with them, *in rem, quasi in rem*, or otherwise;

B.      That any attempt to assert such claims at all relating to the Bunkers, which results in delay of the Vessel, cancelation or reformation of the impeding Vessel charter, or interference at all with the Vessel in this District or otherwise, is wrongful and Shipoil and any other entity or person making such attempt is liable to Christine for damages in an amount for this Court to determine;

C.      That any claims demanded notwithstanding are excessive and wrongful; and

D.      That this Court issue such other declaratory relief to Christine as is just and proper, and this Court award Christine its costs and other further proper relief.

Dated: December 8, 2023.

/s/ J. Stephen Simms
J. Stephen Simms (#4269)
Catherine M. Benson (#25995)
Simms Showers LLP
201 International Circle, Suite 230
Baltimore, Maryland 21030
Phone:  410-783-5795
Fax:      410-510-1789
jssimms@simmsshowers.com
cmbenson@simmsshowers.com